Case 1:22-cv-01344-CJB   Document 96   Filed 12/18/25   Page 1 of 5 PageID #: 1135

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE NIELSEN COMPANY (US), LLC; and GRACENOTE, INC. ) ) ) | |
| Plaintiffs, ) | C.A. No. 22-1344-CJB |
| ) v. ) ) | **JURY TRIAL DEMANDED** |
| ACRCLOUD, LTD. ) ) ) | |
| Defendant. ) | |

## JOINT STATUS REPORT

| | |
|---|---|
| David E. Moore (#3983) | Andrew E. Russell (#5382) |
| Bindu A. Palapura (#5370) | Nathan R. Hoeschen (#6232) |
| POTTER ANDERSON & CORROON LLP | SHAW KELLER LLP |
| Hercules Plaza, 6th Floor | I.M. Pei Building |
| 1313 N. Market Street | 1105 North Market Street, 12th Floor |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| Tel: (302) 984-6000 | Tel: (302) 298-0700 |
| dmoore@potteranderson.com | arussell@shawkeller.com |
| bpalapura@potteranderson.com | nhoeschen@shawkeller.com |
| | |
| OF COUNSEL: | OF COUNSEL: |
| | |
| Steven Yovits | Jason Xu |
| Constantine Koutsoubas | RIMON LAW P.C. |
| Douglas Lewis | 1990 K Street, NW Suite 420 |
| Jason P. Greenhut | Washington, DC 20006 |
| KELLEY DRYE & WARREN LLP | Tel.: (202) 971-9494 |
| 333 West Wacker Drive | |
| Chicago, IL 60606 | Eric Cohen |
| Tel.: (312) 857-7070 | RIMON LAW P.C. |
| | 4030 Wake Forest Road |
| Clifford Katz | Suite 300 |
| KELLEY DRYE & WARREN LLP | Raleigh, NC 27609 |
| 3 World Trade Center | Tel.: (984) 960-2860 |
| 175 Greenwich Street | |
| New York, NY 10007 | |
| Tel.: (212) 808-7800 | |

*Attorneys for Plaintiffs The Nielsen Company
(US), LLC and Gracenote, Inc.*

| | |
|---|---|
| Dated: December 18, 2025<br>12615205 / 14944.00005 | John Handy<br>RIMON LAW P.C.<br>1765 Greensboro Station Place<br>Tower I<br>Suite 900<br>McLean, VA 22102<br>Tel.: (703) 659-0075<br><br>*Attorneys for Defendant ACRCloud, Ltd.* |

Dear Judge Burke:

Pursuant to the Court's December 11 Order (D.I. 93) ("the Court's Order"), the parties met and conferred and were not able to reach agreement on terms 2 and 3 from the *Markman* hearing.

**Nielsen's Statement**

On December 12, Nielsen provided ACRCloud with the following proposals as compromises for terms 2 and 3:

> **"Output device" (Term 2)**: (1) a server that generates output signaling user exposure to the identified reference media item, or (2) a display that presents output signaling user exposure to the identified reference media item
>
> "**Server selector**" **(Term 3)**: a server that performs load balancing

Rather than engaging substantively with Nielsen's proposals, ACRCloud merely criticized them and repeatedly refused to offer any counterproposals, preventing any meaningful progress toward compromise. *See* Exhibit 1, December 16, 2025 Email from Andrew Russell.

During the meet-and-confer, Nielsen asked ACRCloud to provide alternative proposals for these terms, but ACRCloud declined to do so. ACRCloud asked if Nielsen would consider an agreement to construe the terms as means-plus-function with a different corresponding structure than what the parties had previously agreed to. Once again, Nielsen asked ACRCloud to provide a proposal, but ACRCloud declined to do so. ACRCloud merely offered (and continues to offer) nothing more than criticism of Nielsen's attempt to compromise.

The Court's Order requires the parties to "submit a joint status report … reporting on the status of their discussions." (D.I. 93.) Nielsen's statement complies with the Court's Order. TVision's statement is essentially a supplemental brief, which simply rehashes the arguments in its prior briefing. Accordingly, Nielsen refers the Court to Nielsen's responsive briefs in response. *See* D.I. 83 at 25-29, 41-45.

At the hearing, ACRCloud criticized Nielsen's proposed construction of "output device" as allegedly overbroad and unbounded. Now that Nielsen has proposed a much narrower construction limited to one of two specific hardware devices, ACRCloud finds another reason to complain. As to "server selector," ACRCloud cites no case in support of its assertion that "server" is a term that fails to connote sufficient structure to a POSITA. Indeed, the cases show the opposite is true. *See*, *e.g.*, *Sound View Innovations, LLC v. Facebook, Inc.*, 2017 WL 2221177, at *10 (D. Del. May 19, 2017) ("Defendant argues that 'server' is a 'functional, generic term' or a 'nonce' word. I disagree. 'Server' has a well-known meaning to a person of ordinary skill in the art and connotes a definite structure."). It is unclear what portion of *Sound View* ACRCloud cites in rebuttal, but contrary to ACRCloud's assertions, Nielsen does not agree that "a server is *not* a specific hardware or software configuration."

Most importantly, because the two terms under consideration do not include the word "means," there is a presumption that they should not be treated as means-plus-function terms. TVision has failed to offer any evidence to overcome that presumption. Nielsen asks the Court to adopt either its originally-proposed constructions or the compromise constructions noted above.

The Honorable Christopher J. Burke
December 18, 2025                                                                                                          Page 2

**ACRCloud's Statement**

Nielsen calls its proposals "much narrower," but they are not. Requiring a "server" or "server that performs load balancing" rather than an "output device" or "stream collection server *selector*" tracks their original constructions and effectively reads these elements out of the claim.

Unlike in *Sound View,* Nielsen's expert here agrees that a server is *not* a specific hardware or software configuration. *See Sound View*, 2017 U.S. Dist. LEXIS at *27; D.I. 84, Ex. 1 at ¶ 42. Nielsen's expert Dr. Mitzenmacher testified that a "server" is merely "***a software program, or the computer on which that program runs,*** that provides a specific kind of service to client software running on the same computer or other computers on a network." D.I. 84, Ex. 1 at ¶ 42 (emphasis added). A "server" can also be "a computer that provides data to other computers," Ex. A, or "[a] program which provides some service to other (client) programs," Ex. B (Nielsen previously relied on the sources in Exs. A and B to define "output device," D.I. 83 at 28).

In other words, Nielsen's proposed construction of "output device" and "server selector" as a "server" is not a compromise, and instead is nothing more than a restatement of Nielsen's original proposed constructions of "hardware or software" (for "output device") or "a software program, or the computer on which that program runs" (for "stream collection server"). "Server" adds the *functional* requirement of providing data or a service, but no *structure* for doing so.

Nothing about the word "server" provides *structure* for claim elements that can indisputably be performed by software. As the Court has recognized, "the structure of software 'is understood through, for example, an outline of an algorithm, a flowchart, or a specific set of instructions or rules.'" *Oasis Tooling, Inc. v. Siemens Indus. Software, Inc.*, C.A. No. 22-312-CJB, 2023 U.S. Dist. LEXIS 206364, at *37 (D. Del. Nov. 17, 2023) (citation omitted). A "server" that can be *any* computer or *any* program that provides data or a service adds no structure whatsoever to the claim—it requires no specific hardware, and no algorithm, flowchart, or specific set of instructions or rules. *See id.* (defining the required structure for a software claim element). It is not "sufficient structure for performing [the claimed] function" for either claim element. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, at 1349 (Fed. Cir. 2015).

Likewise, a "display" is not sufficient structure to perform the claimed function of the "output device" limitation. Without software and its algorithmic structure, a display cannot "generat[e]" output—e.g., compiling a report. '823 Patent, claim 6, and 10:51-62. It merely *displays* that output. *See Williamson*, 792 F.3d at 1349. In contrast, the portion of the specification that the parties agree corresponds to this claim element describes generating a "*report*[]" using "standard relational-database queries" that "can be place[d] in tabular or graphical format for presentation." '823 Patent, 10:51-62. It is undisputed that a display standing alone cannot accomplish that. Moreover, the patent does not mention a "display" at all, other than in a disclaimer regarding references to "displaying" (of which there are none). *Id.*, 14:18-32.

Finally, as to "stream collection server," Nielsen adds that the server "performs load balancing"—again reading in an unsupported and confusing limitation of "load balancing" to the claim. But the claim says that the "selector" selects a server based on *either* "load" or "geographic proximity," not merely "load." And even if Nielsen's interpretation *were* correct, that would render "load balancing" nothing more than a restatement of the claimed function.

The Honorable Christopher J. Burke
December 18, 2025                                                                                          Page 3

                                    Respectfully,

                                    */s/ David E. Moore*

                                    David E. Moore

DEM:rms/12615205/14944.000005

cc:      Counsel of Record (via electronic mail)